FROMAN AND SANDERS *v.* STATE.

4989                                    339 S. W. 2d 601

Opinion delivered November 7, 1960.

*Nance & Nance,* for appellant.

*Bruce Bennett,* Atty. General, by *Ancil M. Reed,* Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. Appellants were convicted of the crime of robbery. The only witness that connects the appellants with the offense is Mary Salmon. In these circumstances if she was an accomplice, the conviction cannot stand. The State proved that on the night of February 12, 1958, R. J. Wilson was robbed of about $195 in a liquor store at West Memphis. There is no evidence whatever which tends to show that appellants committed the offense except the testimony of Mary Salmon. She testified that she had known the defendants since 1956; that Marvin Sanders was her lover; that on the night of February 12th she and the defendants drove to West Memphis; that she knew the defendants had no money when they went there; that Marvin Sanders took a pistol out of the glove compartment of the automobile and put it under his belt; that the two men then got out of the car but that she stayed in the car; that the men were gone a few minutes and returned; they had one-half pint of liquor and she saw one of them stuffing money in his pocket; she knew at that time that they robbed the liquor store; she asked them if they had hurt the man in the store. She testified that she was charged with the robbery involved here but later the case was nolle prossed. She stated that she still loves Sanders; that he is the father of her child; that her husband is in the penitentiary; that she lived with another man named Chuck Tutor as his wife, at a time when she was married to her present husband. She testified that after the robbery was committed she and the two men went to her apartment in Memphis and there the men divided the money; they counted it out on a table in her presence. She denied that she got any part of it but stated that Froman stayed in her apartment until about 2 or 3 o'clock in the morning and that Sanders stayed there until the next day. She stated that she told Sanders' stepmother about the crime having been committed, but told no one else about it for more than a year, when she told the Memphis police. The evidence shows conclusively that as a matter of law the prosecuting witness, Mary Salmon, is an accomplice.

Ark. Stats. § 41-120 provides: "An accessory after the fact, is a person who after a full knowledge that a crime has been committed, conceals it from the magistrate, or *harbors* and protects the person charged with or found guilty of the crime." [Emphasis ours.] According to the undisputed testimony, Mary Salmon knew at the time that the men committed the robbery. She testified:

"Q. You knew they robbed something and you knew they robbed that liquor store, didn't you?

A. Yes, sir.

Q. You came back to Memphis and you counted the money didn't you? How was this money, currency or silver?

A. It was in bills and silver."

Immediately following the robbery she harbored the men in her apartment. Undoubtedly she was an accessory after the fact. An accessory after the fact is an accomplice. In *Polk* v. *State,* 36 Ark. 117, the Court said: "An 'accomplice', in the full and generally accepted legal signification of the word, is one who, in any manner, participates in the criminality of an act, whether he is considered, in strict legal propriety, as a principal in the first or second degree, or merely as an accessory before or after the fact." In *Stevens* v. *State,* 111 Ark. 299, 163 S. W. 778, the Court quoted with approval from *State* v. *Jones,* 91 Ark. 5, 120 S. W. 154, as follows: " '. . . where a felony has been committed, the felon stands charged with the crime, and it is the duty of all persons, who know or have reason to believe that he is guilty of a felony to arrest him. One who, with a full knowledge that the crime has been committed, harbors and protects the felon, is guilty as accessory and may be punished as such, whether the principal offender be arrested or not. Any other view of the statute would permit a person to go unpunished who has been guilty of the most flagrant act of harboring and protecting a felon before a warrant of arrest could be procured, or an indictment could be returned.' " The Court also

said in the *Stevens* case: ''There is a conflict of author-ity as to whether an accessory after the fact is an accomplice, but the decisions of this court are to the effect that he is.'' On rehearing in the *Jones* case, Judge McCulloch said: ''Under the statute now under consideration, it is unimportant how the knowledge is received by the alleged accessory; it is sufficient to constitute the offense if he knows, at the time he harbors and protects the felon, that the latter has committed the felony named in the indictment.''

In attempting to explain why she waited for more than a year after the alleged crime was committed before giving the information to the police, the witness, Mary Salmon, stated that she was scared, but she said she was not afraid of Sanders, and she does not indicate that she was afraid of Froman, and she stated that she was not afraid of the police. In fact, she gives no explanation of her asserted fear. In Wharton's Criminal Evidence, 12th Ed., Vol. 2, p. 238, it is said: ''Nor is one an accomplice who through fear of immediate danger to life or member conceals the commission of the crime. But ordinarily, 'a person who aids and assists in the commission of a crime or in measures taken to conceal it and *protect the criminal,* is not relieved from criminality as an accomplice on account of fear excited by threats or menaces, unless the danger be to life or member, nor unless that danger be present and immediate as above announced. . . .'' [Emphasis ours.]

In *Henderson* v. *State,* 174 Ark. 835, 297 S. W. 836, the Court said: ''The general test to determine whether a witness is or is not an accomplice is, could he himself have been indicted for the offense, either as a principal or accessory?'' The witness, Mary Salmon, was indicted, although later the indictment was nolle prossed. But certainly, according to her own testimony in this case, her participation in the offense was sufficient to sustain a conviction on such an indictment if a jury had returned a verdict of guilty.

In *Havens* v. *State,* 217 Ark. 153, 228 S. W. 2d 1003, the Court said: ''We have approved the follow-

ing test generally applied to determine whether one is an accomplice: 'Could the person charged (as an accomplice) be convicted as a principal, or an accessory before the fact, or an aider and abetter upon the evidence? If a judgment of conviction could be sustained, then the person may be said to be an accomplice. . . .' "

In Underhill's Criminal Evidence, 5th Ed., Vol. 1, p. 335, it is said: "The burden is on the defendant to show that the witness for the state is an accomplice. This is usually determined by the court as a question of law. But if the evidence is conflicting as to the participation of the witness in the commission of the crime, the matter should be left to the jury under proper instructions as to intent and participation." Here there is no conflict in the evidence as to Mary Salmon's participation in the crime. She waited in the automobile near the scene of the crime while the robbery was perpetrated; she knew the crime was committed; she permitted the two men to go to her apartment and divide the money obtained in the robbery; she harbored one of the men until 2 or 3 o'clock in the morning and the other until the next day.

It being established that she is an accomplice, the question that follows is whether there is any evidence corroborating her testimony connecting the appellants with the crime. Ark. Stats. § 43-2116 provides: "A conviction can not be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. . . ."

It will be noticed that the corroborating evidence must tend to connect the defendant with the crime. Corroborating evidence that the crime was committed and the details thereof are not sufficient. The corroborating evidence must be independent of evidence given by the accomplice. In Underhill's Criminal Evidence, 5th Ed., Vol. 1, p. 401, it is stated: "The test of suf-

ficiency of corroboration has been stated to be whether, if the testimony of the accomplice is eliminated from the case, the testimony of the other witnesses be sufficient to establish the commission of the offense and the connection of the accused therewith."

True, Mrs. Salmon knew the details of the crime; it was shown that the robbers tore the phone from the wall. She testified that she heard the men say they tore the phone loose. Mr. Wilson, the victim of the robbery, testified as to the denomination of the money taken in the robbery, and Mrs. Salmon testified that the money the robbers divided in her apartment was of similar denomination. But when the evidence is analyzed it is perfectly clear that if Mary Salmon's testimony were eliminated, there would not remain a scintilla of evidence which tends to connect the defendants with the crime.

The jury returned separate verdicts finding each appellant guilty of robbery, but it is stated in each verdict that the jury are unable to agree on the punishment, leaving it to the court to fix the punishment, which the court did. Appellants contend that the statute authorizing the court to fix the punishment in certain cases is unconstitutional. Ark. Stats. § 43-2306 provides: "When a jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment in their verdict, or if they assess a punishment not authorized by law, and in all cases of a judgment on confession, the court shall assess and declare the punishment, and render judgment accordingly."

Article 2, § 7 of the Constitution of Arkansas provides: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, . . ." Article 2, § 8 provides: ". . . but if, in any criminal prosecution, the jury be divided in opinion, the court before which the trial shall be had may, in its discretion, discharge the jury, and commit or bail the accused for trial at the same or the next term of said court; . . ." Article 2, § 10 provides: "In all

criminal prosecutions the accused shall enjoy the right to a speedy and public trial by impartial jury. . . ." Article 2, § 21 provides: "No person shall be taken or imprisoned, or disseized of his estate, freehold, liberties or privileges; or outlawed, or in any manner destroyed or deprived of his life, liberty or property, except by the judgment of his peers or the law of the land; . . ."

The great weight of authority is that statutes similar to ours permitting the court to fix the punishment under certain circumstances are not unconstitutional. We agree with that view. *State* v. *Hamey,* 168 Mo. 167, 67 S. W. 620; *Woods* v. *State,* 130 Tenn. 100, 169 S. W. 558, L.R.A. 1915F, 531; *Ward* v. *Hurst,* 300 Ky. 464, 189 S. W. 2d 594; *Lee* v. *Buchanan,* Ky., 264 S. W. 2d 661. See also 31 Am. Jur. 575; 50 C. J. S. 784.

Since the accomplice's testimony connecting the defendants with the crime is not corroborated, the judgment must be reversed. It is so ordered.

McFADDIN, J., dissents.

GEORGE ROSE SMITH and WARD, JJ., concur.

GEORGE ROSE SMITH, J., concurring. I cannot join in the majority's conclusion that Mary Salmon was shown to be an accomplice as a matter of law. This witness did not admit her complicity in the crime, as by turning state's evidence. On the witness stand she sought to maintain her innocence and to convince the jury that it was not until the money was being counted in her home that she was certain a crime had been committed. She explained her failure to report the offense by saying she was afraid to go to the police. Although her avowals of innocence were greatly weakened upon cross examination I cannot say that the jury were bound to disbelieve her. Hence I think we should follow the rule adhered to in *Jackson* v. *State,* 193 Ark. 776, 102 S. W. 2d 546: "In any view of the situation, appellant was entitled to have the question as to whether she was an accomplice submitted to the jury, as it was one of mixed law and fact, . . . unless the testimony or subsequent

events show conclusively she was an accomplice.'' In my opinion the court below properly submitted this issue to the jury.

I agree, however, that the case should be reversed and remanded for a new trial, as the court erred in giving its instruction No. 10. By that instruction the jury were permitted to convict the accused even though Mary Salmon was found to be an accomplice. This instruction should not have been given, for as the majority correctly point out there is no evidence whatever, apart from Mary Salmon's testimony, that connects these appellants with the crime. Hence the jury should not have been given an opportunity to base a conviction upon nonexistent proof.

WARD, J., joins in this opinion.

ED. F. McFADDIN, Associate Justice, dissenting.

Since several questions are presented in this case, I think it may be worthwhile for future reference that I state the reasons for my dissent. I think the judgment should be affirmed for these reasons:

(1)   Mary Salmon was not an accomplice as a matter of law. It was a question of fact for the jury to decide as to whether or not she was an accomplice. If the jury should find that Mary Salmon was not an accomplice, then her testimony would not have to be corroborated.

(2)   If the jury should conclude that Mary Salmon was an accomplice, then her testimony would have to be corroborated; and I think there was ample evidence of corroboration to support the jury verdict:

(a)   Mary Salmon testified that Marvin Sanders took a pistol from the glove compartment of his car as he started toward the liquor store. R. J. Wilson testified that the man who robbed him stuck a pistol in his back. Wilson described the pistol.

(b)   Mary Salmon testified that when Froman returned to the car, she asked where Sanders was, and that Froman went back and was gone a short time and Sanders returned with him. Wilson testified that one of the rob-

bers stopped long enough after committing the robbery to select a bottle of whiskey and that the other robber came back for him.

(c)  Mary Salmon testified that after Froman and Sanders had re-entered the car, Sanders stated that he had torn the telephone off the wall in order to prevent the Wilsons from calling the police. It was testified by Wilson and other witnesses that the telephone was torn from the wall.

(d)  Mary Salmon testified that Froman and Sanders had something over $190 in currency, half dollars, and quarters, when they counted the money in her presence. Wilson testified that the robbers took $196 in currency, half dollars, and quarters.

The corroboration did not merely go to show that a crime was committed; it went to show that Froman and Sanders had committed the particular robbery here involved; and I think this evidence corroborates the testimony of Mary Salmon even if the jury had found that she was an accomplice.

In the concurring opinion in this case it is stated that there was error in Instruction No. 10 as given by the Court. I find no error.[1]

---

[1] So that there can be no misunderstanding about the Instruction No. 10, I copy Instructions 9 and 10 as given by the Court; and I find no error in them:

COURT'S INSTRUCTION NO. 9.

"Therefore, if you find from the evidence in this case under the instructions herein given that Mary Salmon was an accomplice to the crime, then you will consider the following instruction:"

COURT'S INSTRUCTION NO. 10.

"You are instructed that one may not be convicted of a felony upon the uncorroborated evidence of an accomplice. You cannot, therefore, convict the defendants upon the testimony of said witness, Mary Salmon, unless you find her testimony is corroborated by other evidence in the case tending to connect the defendants with the commission of the crime; and the corroboration is not sufficient if it merely shows that the crime was committed and the circumstances thereof. But you are instructed that the amount of such corroborating evidence and its weight is a matter solely for the jury, and if you find that such witness has been corroborated by evidence, positive or circumstantial, other than her own, tending to show that the crime was committed and connecting the defendants with its commission, you will be justified in convicting the defendants, provided you believe them guilty from all the evidence in the case and beyond a reasonable doubt."

Therefore, I conclude that the judgment of conviction should be affirmed.