The Honorable Tracy Steele State Senator Post Office Box 9267 North Little Rock, Arkansas 72119-9267
Dear Senator Steele:
I am writing in response to your request for my opinion on the following two questions:
 1. Does the passage of the Budget Ordinance for 2008 setting compensation for the mayor and Board of Directors, including any applicable raises, satisfy the "ordinance authorization" requirements contained in A.C.A. Section 14-61-110?
 2. What does "comparable to the highest ranking municipal official" mean in the setting of the salary and benefits package of the mayor?
RESPONSE
In response to your first question, the answer in my opinion is "no." Ordinance No. 19,898, which was passed on December 21, 2007, the City Budget Ordinance for 2008, contains an emergency clause.[1] Ark. Code Ann. § 14-61-110 does not permit an ordinance containing an emergency clause to set the compensation for a director or mayor of a city. *Page 2 
It is more difficult to provide a short answer to your second question regarding the salary and benefits package of the mayor. As stated in your opinion request, the mayor of Little Rock was granted expanded powers by Ordinance No. 19,761. Your request asks for an interpretation of the language pertaining to the mayor's salary found at Ark. Code Ann. § 14-61-114(e)(3). This section refers to compensation requirements for a mayor who is given expanded power pursuant to Ark. Code Ann. § 14-61-114(e)(1) only. However, the bulk of the expanded power conferred on the mayor by Ordinance No. 19,761 appears to have been conferred pursuant to Ark. Code Ann. § 14-47-140(a)(1).[2] The compensation requirements for a mayor given additional power pursuant that that section are governed by Ark. Code Ann. § 14-47-140(a)(4), which contains language slightly different than that found at § 14-61-114(e)(3). Because both Ark. Code Ann. § 14-61-114(e)(3) and Ark. Code Ann. § 14-47-140(a)(4) appear to apply, the language of both sections should be construed together and applied to the mayor's compensation package. Accordingly, I believe that the phrase "comparable to the highest ranking municipal official" in reference to the salary and benefits package of a mayor who has been given expanded powers pursuant to both § 14-61-114(e)(1) and § 14-47-140(a)(4) indicates that the mayor should be compensated in a manner that is similar, but not necessarily identical, to other municipal officials and employees with a high level of responsibility.[3]
 Question 1: Does the passage of the Budget Ordinance for 2008 settingcompensation for the mayor and Board of Directors, including anyapplicable raises, satisfy the "ordinance authorization" requirementscontained in Ark. Code Ann. § 14-61-110?
In my opinion, because the Budget Ordinance for 2008 contains an emergency clause at Section 11, it does not satisfy the requirements of Ark. Code Ann. § 14-61-110. While it is the responsibility of the Board of Directors to set the compensation for the Mayor, the compensation must be set by an ordinance that does not contain an emergency clause. Ark. Code Ann. § 14-61-110 states: *Page 3 
 Neither a director nor the mayor of the city shall receive any compensation for his services unless authorized by the voters of the city at a special or general election. Following such authorization, the board of directors, by ordinance, shall state such compensation pursuant to the provisions of Arkansas Constitution Amendment 56, as may be amended, provided that no ordinance setting compensation shall contain an emergency clause.
Ark. Code Ann. § 14-61-110 (emphasis added).[4]
 Question 2: What does "comparable to the highest ranking municipalofficial" mean in the setting of the salary and benefits package of themayor?
Little Rock City Ordinance No. 19,671, passed by the City Board of Directors and approved by the voters, grants expanded authority to the directly elected mayor.
One of the powers granted by Section 2 of Ordinance No. 19,671, the power to direct the city manager, originates from Ark. Code Ann. § 14-61-114(e)(1), which provides:
 (e)(1) The board of directors by ordinance may provide that the duties of the city manager under § 14-47-120 or other statute be performed at the direction of the mayor.
Ark Code Ann. § 14-61-114(e)(3), the provision quoted in your opinion request, sets forth the compensation requirements for a mayor who receives a grant of power under subdivision (e)(1) and provides:
 (3) If an ordinance under subdivision (e)(1) of this section is passed, the mayor shall be compensated with a salary and benefit package comparable to the highest-ranking municipal official.
However, Section 2 of Ordinance No. 19,761 granted additional powers beyond those described in Ark. Code Ann. § 14-61-114(e)(1). The additional powers granted include (with some caveats): the authority to nominate, hire or remove the *Page 4 
City Manager and City Attorney; the authority to nominate and fill vacancies on boards, authorities, or commissions; and the authority to prepare the annual budget of the city together with the city manager. In addition, Section 3 of Ordinance No. 19,761 referred the issue of whether the mayor should have a veto power to the electors. The origin of these powers appears to be Ark. Code Ann. § 14-47-140(a)(1), which provides:
 (a)(1) Any municipality organized and operating under the city manager form of government may authorize the mayor of the municipality to have the following duties and powers if approved by the qualified electors of the municipality at an election called by the board of directors by referendum or by the qualified electors of the municipality by initiative:
 (A)(i) The power to veto an ordinance, a resolution, or an order adopted by the board of directors.
 (ii)(a) The board of directors may override the veto by a two-thirds vote of the number of members of the board.
 (b) The mayor shall be entitled to vote only in case of a tie vote, and his or her presence may be counted to establish a quorum for the conduct of business;
 (B) The power to appoint, subject to confirmation by a majority of the members of the board of directors, persons to fill vacancies on any board, authority, or commission of the municipality;
 (C) The power to hire the city manager, subject to the approval of a majority of members of the board of directors;
 (D) The power to remove the city manager, subject to the approval of a majority of the members of the board of directors;
 (E) The power to prepare and submit to the board of directors for its approval the annual municipal budget;
 (F) The power to hire the city attorney, subject to the approval of a majority of members of the board of directors; and
 (G) The power to remove the city attorney, subject to the approval of a majority of members of the board of directors.
The compensation requirements for a mayor given expanded authority under Ark. Code Ann. § 14-47-140(a)(1) are found at Ark. Code Ann. § 14-47-140(a)(4), which states: *Page 5 
 (4) A mayor who has the duties and powers authorized under subdivision (a)(1) of this section shall be compensated with salary and benefits comparable to the salary and benefits of an official or employee of the municipality with similar executive duties.
Because Ordinance No. 19,761 granted the mayor of Little Rock powers and duties authorized by both Ark. Code Ann. § 14-61-114(e)(1) and § 14-47-140(a)(1), both Ark. Code Ann. § 14-61-114(e)(3) and § 14-47-140(a)(4) should apply to his compensation package. In the case ofBush v. State, the Arkansas Supreme Court stated:
 In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. Lawhon Farm Servs. v. Brown, 335 Ark. 272, 984 S.W.2d 1 (1998); Hercules, Inc. v. Pledger, 319 Ark. 702, 706, 894 S.W.2d 576, (1995). Statutes relating to the same subject must be construed together and in harmony, if possible. See K.M. v. State, 335 Ark. 85, 983 S.W.2d 93 (1998); Johnson v. State, 331 Ark. 421, 961 S.W.2d 764 (1998).
Accordingly, the phrase from Ark. Code Ann. § 14-61-114(e)(1) referenced in your opinion request, "comparable to the highest ranking municipal official" should be construed together with the language of Ark. Code Ann. § 14-47-140(a)(4), "comparable to . . . an official or employee of the municipality with similar executive duties and powers."
 [T]he first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.
Harris v. City of Fort Smith, 366 Ark. 277, 280, 234 S.W.3d 875, 878
(2006).
Both code sections describe the compensation to be given as "comparable." However, the sections differ slightly in describing whose compensation the mayor's compensation must be comparable to. While § 14-61-114(e)(1) states that the mayor's compensation must be comparable to that of the "highest ranking municipal official," § 14-47-140(a)(4) requires the mayor's compensation to be *Page 6 
comparable to "an official or employee of the municipality with similar executive duties and powers."
The first issue to be addressed is the meaning of the word "comparable," which has a well accepted common meaning. The Random House Webster's Unabridged Dictionary defines comparable as: "capable of being compared; having features in common with something else to permit or suggest comparison; worthy of comparison; usable for comparison; similar." For this reason, I believe that the word "comparable," as used in these statutes, means similar, but not necessarily identical.[5]
The second issue to be addressed is whose compensation the mayor's compensation must be comparable to. Under Ark. Code Ann. § 14-61-114(e)(1), the mayor's compensation must be comparable to that of the "highest ranking municipal official." Of course, the term "rank" refers to the position or standing of the individual, the term "municipal" refers to the fact that the individual described is connected with a certain city or town, and the term "official" indicates "one who holds or is invested with a public office." BLACK'S LAW DICTIONARY 1284, 1042, 1119 (8th ed. 2004). Thus, taking these terms together, § 14-61-114(e)(1) mandates that the mayor's salary must be similar to the salary of the person within the city's government who holds the office with the highest standing.[6] *Page 7 
Furthermore, under Ark. Code Ann. § 14-47-140(a)(4), the mayor's compensation must be comparable to that of "an official or employee of the municipality with similar executive duties and powers." As previously described, an official is someone who holds a public office, while an employee can be defined as: "A person who works in the service of another person (the employer) . . . the employer has the right to control the details of work performance." BLACK'S LAW DICTIONARY 564 (8th ed. 2004). The existence of an employment relationship is generally a question of fact determined by reference to various factors, the most important of which is degree of control.See Blankenship v. Overholt, 301 Ark. 476, 479, 786 S.W.2d 814, 817
(1990). Thus, whether a specific individual qualifies as an employee for purposes of Ark. Code Ann. § 14-47-140(a)(4) would be a question for a finder of fact in many cases.[7] In addition, whether a specific official or employee has similar executive duties and powers to those of the mayor would, again, depend on the particular circumstances and would therefore be a question of fact.
Thus, taking the two applicable statutes, Ark. Code Ann. § 14-61-114(e)(3) and § 14-47-140(a)(4) together, I believe that the mayor's compensation is required to be similar, but not necessarily identical, to the compensation given to other city office holders and employees with a similar, high level of responsibility.
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] Section 11 of Ordinance No. 19,898 is entitled "EmergencyClause" and states, "It is imperative that a budget for the ensuingfiscal year and calendar year be passed prior to the end of the currentcalendar year . . . an emergency is, therefore, declared to exist andthis ordinance shall be in full force and effect on January 1,2008. . . ."
[2] Ordinance # 19,761 does not cite Ark. Code Ann. § 14-47-140 as its primary authority; section 2 of the Ordinance cites § 14-47-120, a statute which deals with the power of the city manager. However, the powers granted by the Ordinance appear to have been gleaned directly from Ark. Code Ann. § 14-47-140(a)(1)(A)-(G).
[3] Little Rock City Attorney Thomas M. Carpenter recently authored an opinion dealing with the same issues. See City Attorney Opinion No. 2008-02.
[4] Ark. Const., amend. 56 states, in relevant part, "Compensation of municipal officers and officials shall be fixed by the governing body of the municipality, not to exceed limits which may be established by law."
[5] Whether two compensation packages are sufficiently similar to be considered "comparable" is a question of fact. This office does not make factual determinations in the issuance of Attorney General opinions.
[6] There is nothing in the statute to indicate which city office is considered to have the highest standing. Presumably, this could vary from city to city and would require a factual determination. Because subdivision (e)(3), which contains the phrase "comparable to the highest ranking municipal official", is part of a statute which permits a city to make the city manager subordinate to the mayor (Ark. Code Ann. § 14-61-114), it would seem logical to assume that the phrase "highest ranking municipal official" is meant to indicate the city manager. However, this cannot be the case if the term "official" is given its plain meaning: one who holds an office. Prior to the late 1950s, a city manager was considered an office holder. See McClendon et al. v Board ofHealth, 141 Ark. 114, 216 S.W.289 (1919). However, in 1957, the statute which created the city manager form of government in Arkansas was amended to re-classify a city manager as an employee. See Mann v.Lowry, 227 Ark. 1132, 1136-37, 303 S.W.2d 889, 891 (1957). Under the Arkansas Constitution, one who holds an office must qualify as an elector. Ark. Const. Art. 19 § 3. In order to qualify as an elector, one must be a resident of the State. Ark. Const. Art. 3 § 1. Because the General Assembly wanted cities to have the freedom to "select a qualified manager, who may be from out of the State . . . which leads to a better operation of the City Manager plan[,]" it amended the City manager act to make the city manager an employee and, therefore, exempt from the Constitution's residency requirement. Mann, 227 Ark. 1137,303 S.W.2d at 891. Today, the city manager continues to be statutorily defined as an employee. See Ark. Code Ann. § 14-47-119.
[7] A notable exception would be the city manager. As previously stated, the city manager is statutorily defined as an employee and would therefore certainly qualify as an employee for purposes of Ark. Code Ann. § 14-47-140. *Page 1